1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11   DEAN A. DOGLIETTO,                    No.  11-cv-01501-MCE-JFM

12              Plaintiff,

13        v.                              **MEMORANDUM & ORDER**

14   TRINITY PROTECTION SERVICES,
     INC. and DOES 1 through 5, inclusive
15
                 Defendants.
16

17

18        Dean Doglietto ("Plaintiff") initiated this action to seek relief for his alleged

19   wrongful termination.   Trinity Protection Services ("Defendant") filed a Motion for

20   Summary Judgment.  (ECF No. 51)  For the following reasons, Defendant's Motion for

21   Summary Judgment is GRANTED.[1]

22   ///

23   ///

24   ///

25   ///

26   ///

27   _____

28        [1] Because oral argument will not be of material assistance, the Court ordered this matter
     submitted on the briefing.  E.D. Cal. Local Rule 78-230(h).

                                          1

1

## BACKGROUND[2]

2

3          Defendant is a security company that places security officers at United States

4    Government offices.  In Northern California, Defendant provides security officers to the

5    Department of Homeland Security, Federal Protective Services ("FPS").  On May 20,

6    2010, Defendant hired Plaintiff as a security officer contingent on his successful

7    completion of a training course mandated by FPS.  Defendant could not place Plaintiff in

8    the FPS until he successfully completed his training.

9          On December 13, 2010, Plaintiff began his training course.  Plaintiff had previous

10   experience with firearms.  On January 16, 2011, Plaintiff began the weapons training

11   portion of the course.  At the beginning of weapons training, Defendant issued Plaintiff a

12   revolver, the Rossi M971 ("Rossi"), to use throughout the weapons training.  Defendant's

13   contract with the United States Government required contract security officers to use

14   either the Rossi or Ruger GP100 ("Ruger").  During the weapons training, Plaintiff

15   determined that the Rossi "might not protect him or the public if needed in a critical

16   situation."

17          On January 20, 2011, Plaintiff used the Rossi to pass his shooting accuracy test.

18   After the test, Plaintiff requested a new weapon.  Plaintiff's superior, Captain Danally,

19   attempted to replace Plaintiff's Rossi with another Rossi.  Plaintiff refused to accept the

20   new gun.  Captain Danally expressed his frustration with Plaintiff; although, shortly

21   afterwards Captain Danally asked Plaintiff to explain his concerns about the Rossi.

22   ///

23

24          [2] The following undisputed facts are taken from Plaintiff's Opposition to Defendant's Motion for
     Summary Judgment.  The Court also relied on Defendant's Statement of Undisputed Facts in Support of
25   Defendant's Motion for Summary Judgment.  (ECF No. 51-2)  Plaintiff responded to Defendant's
     Statement of Undisputed Facts in his Opposition to Defendant's Motion for Summary Judgment.  Plaintiff
26   listed three facts he disputed in Defendant's Undisputed Facts.  Thus, the Court interprets the rest of
     Defendant's Undisputed Facts as true according to the Plaintiff.  (ECF No. 61-2 and 51-2)  The only
27   evidence Plaintiff submitted with his Opposition was a three-page irrelevant fax (ECF No. 61, Attachment
     1) and the California's Department of Consumer Affairs Bureau of Security and Investigative Services
28   Firearms Training Manual.  Defendants did not object to the evidences relevance; thus, the Court
     considered both fax and the manual, but it did not find either helpful.

1   After their conversation, Captain Danally told Plaintiff to reach out to Daryl Brooks, the

2   Program Manager, who could replace Plaintiff's Rossi with a Ruger.  Plaintiff and Brooks

3   spoke at least once to set up a meeting.  The meeting never took place and Brooks

4   terminated Plaintiff at the end of January 2011.

6                                    **STANDARD**

8        The Federal Rules of Civil Procedure provide for summary judgment when "the

9   pleadings, depositions, answers to interrogatories, and admissions on file, together with

10  affidavits, if any, show that there is no genuine issue as to any material fact and that the

11  moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex

12  Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is

13  to dispose of factually unsupported claims or defenses.[3]  Celotex Corp., 477 U.S. at 325.

14       Rule 56 also allows a court to grant summary adjudication on part of a claim or

15  defense.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment,

16  identifying . . . the part of each claim or defense . . . on which summary judgment is

17  sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal.

18  1995); France Stone Co., Inc. v. Charter Twp. of Monroe, 790 F. Supp. 707, 710 (E.D.

19  Mich. 1992).

20       The standard that applies to a motion for summary adjudication is the same as

21  that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a), 56(c);

22  Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

>          Under summary judgment practice, the moving party always
>          bears the initial responsibility of informing the district court of
>          the basis for its motion, and identifying those portions of 'the
>          pleadings, depositions, answers to interrogatories, and
>          admissions on file together with the affidavits, if any,' which it
>          believes demonstrate the absence of a genuine issue of
>          material fact.

_____

[3] All further references to Rule or Rules refer to the Federal Rules of Civil Procedure unless specifically noted otherwise.

3

1  Celotex Corp., 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

2      If the moving party meets its initial responsibility, the burden then shifts to the

3  opposing party to establish that a genuine issue as to any material fact actually does

4  exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986);

5  First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

6      In attempting to establish the existence of this factual dispute, the opposing party

7  must tender evidence of specific facts in the form of affidavits, and/or admissible

8  discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

9  56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a

10  fact that might affect the outcome of the suit under the governing law, and that the

11  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

12  for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

13  (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347,

14  355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is

15  a preliminary question for the judge, not whether there is literally no evidence, but

16  whether there is any upon which a jury could properly proceed to find a verdict for the

17  party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251

18  (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)).  As the Supreme Court

19  explained, "[w]hen the moving party has carried its burden under Rule 56(c), its

20  opponent must do more than simply show that there is some metaphysical doubt as to

21  the material facts . . . . Where the record taken as a whole could not lead a rational trier

22  of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita,

23  475 U.S. at 586-87.

24      In resolving a summary judgment motion, the evidence of the opposing party is to

25  be believed, and all reasonable inferences that may be drawn from the facts placed

26  before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

27  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

28  obligation to produce a factual predicate from which the inference may be drawn.

1  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

2  810 F.2d 898 (9th Cir. 1987).

3

4  **ANALYSIS**

5

6      Plaintiff alleges that Defendant wrongfully terminated him in violation of public

7  policy.  Defendants argue that Plaintiff's claim fails as a matter of law because Plaintiff

8  failed to establish the existence of a fundamental public policy, provide evidence that

9  Plaintiff engaged in any conduct that could be considered protected activity, and there is

10  no nexus between any protected activity and Plaintiff's termination. (ECF Nos. 51 and

11  69)

12      Wrongful termination in violation of public policy is a California common law cause

13  of action that enables a discharged employee to bring a tort action and recover damages

14  if an employer terminated the employee for a reason that violates a fundamental public

15  policy.  Freund v. Nycomed Amersham, 347 F.3d 752, 758 (9th Cir.2003).

16          The public policy implicated must be "(1) delineated in either
            constitutional or statutory provisions; (2) 'public' in the sense
17          that it 'inures to the benefit of the public' rather than serving
            merely the interests of the individual; (3) well established at
18          the time of discharge; and (4) substantial and fundamental."

19  Freund, 347 F.3d at 758.

20      In Plaintiff's Reply to Defendant's Motion for Summary Judgment, Plaintiff argues

21  that summary judgment is inappropriate because a jury needs to decide the following

22  questions: (1) why did Defendant ask Plaintiff to take a second firing test; (2) why was

23  Defendant callous when Plaintiff expressed his concerns about the Rossi; and (3) does

24  Defendant think it is a safe policy to send their employees into the field with defective

25  weapons? (ECF No. 61)  Plaintiff listed three disputed facts in his Opposition to

26  Defendant's Motion for Summary Judgment.  (ECF No. 61 at 7)

27  ///

28  ///

1  Plaintiff argued that the following facts are disputed: (1) FPS rules required that trainees

2  use the same weapon throughout the weapons training; (2) Plaintiff did not report any

3  problems with the weapon; and (3) Plaintiff did not report problems with the assigned

4  Rossi to Defendant prior to or during the FPS qualifying shoot. Id. The gist of Plaintiff's

5  argument is that Defendant fired Plaintiff because he refused to use the dangerous gun

6  they issued him, possibly endangering himself and the community.

7       In spite of Plaintiff's contention, the Court finds that no genuine issues of material

8  fact exist.  Plaintiff has not participated in discovery or submitted any relevant evidence

9  to the Court.[4]  (ECF No.75)  Thus, the Court must accept as true all of Defendant's

10  undisputed facts, as Plaintiff has provided no evidence calling them into dispute.

11  Plaintiff's filings fail to explain what facts and law supports his cause of action.  The

12  Court interprets the questions Plaintiff posed in his Opposition to Defendant's Motion for

13  Summary Judgment and the three disputed facts listed as the facts Plaintiff asserts are

14  material to the outcome of this case.  However, Plaintiff's questions and disputed facts

15  contradict each other.  Plaintiff argues that Defendant fired him for reporting his concerns

16  about the Rossi.  Plaintiff also argues that the case should survive this Motion for

17  Summary Judgment because Defendant does not acknowledge that Plaintiff reported

18  problems with the gun.  None of these arguments raise a genuine issue of material fact.

19       None of Plaintiff's questions or facts are material to the outcome of the case.  It is

20  undisputed that Defendant hired Plaintiff as a provisional hire and that he had to

21  complete a training course before becoming a non-provisional hire.  Plaintiff was a

22  trainee; Plaintiff's trainers determined whether he passed the course and whether

23  another shooting accuracy test was necessary.  It is undisputed that Plaintiff was

24  unhappy with the Rossi Defendant issued him.

25  _____

26  [4] The Court ordered Plaintiff to respond to Defendant's discovery request and Plaintiff's counsel
(Ms. Joann L. Pheasant) to pay a fine for discovery abuses.  (ECF No. 75)  In Plaintiff's Opposition to

27  Defendant's Motion for Summary Judgment, dated July 9, 2012, Plaintiff's attorney wrote that she provided
discovery and argued that Plaintiff should not be penalized for Plaintiff's former attorney's bad deeds.

28  However, in Defendant's Reply to Plaintiff's Opposition, Defendants allege they had not received discovery
as of August 2, 2012.  The fine has not been paid to this date.

It is also undisputed that Defendant offered Plaintiff a new gun; he refused the new gun. Superiors attempted to speak with Plaintiff about his dissatisfaction and he disregarded their attempts to find a solution.  These attempts are not consistent with Plaintiff's claim that Defendant was callous when Plaintiff asked for a new gun.  Freedom from Plaintiff's superiors' irritation or frustration does not implicate a fundamental public policy.  There is no evidence that Defendant ignored Plaintiff's complaint about the faulty Rossi.  Plaintiff does not dispute that a manager spoke with him about the problem and offered him a new gun.  Plaintiff was dissatisfied with the guns Defendant provided him and stopped attending the course.  Defendant fired him for his failure to complete the course.

Even taking all of Plaintiff's evidence and allegations as true, a reasonable jury could not possibly find for Plaintiff based on his unsupported accusations.  Plaintiff failed to provide any evidence to make out the elements necessary to prove a successful wrongful termination in violation of public policy claim.  If this case proceeded to trial, the Plaintiff would have no relevant evidence to present to a jury.

**CONCLUSION**

For the reasons stated, Defendant's Motion for Summary Judgment (ECF No. 51) is GRANTED.  As such, Plaintiff's request for putative damages is moot.  The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

Dated:  December 21, 2012

_____

MORRISON C. ENGLAND, JR

CHIEF JUDGE, UNITED STATES DISTRICT COURT

7